THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH C. NUNNLEY, Defendant-Appellant.

(No. 61566; ▮▮▮▮▮▮▮▮▮▮

First District (2nd Division)—November 4, 1975.

James R. Streicker and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM (Before Downing, P. J., Stamos and Leighton, JJ.):

Defendant was charged with criminal trespass to vehicles, in that on November 6, 1974, he knowingly entered a 1972 Oldsmobile without the consent of the owner, Robert Muhr. (Ill. Rev. Stat. 1973, ch. 38, par. 21—2.) He was convicted following a bench trial and sentenced to the House of Correction. He now appeals, contending he was not proved guilty beyond a reasonable doubt.

The defendant and the owner of the vehicle worked together on November 5, 1974. They then cashed their checks and commenced a tour of bars where both men consumed a formidable number of beers. Starting

at 5 P.M. on November 5, they toured either 4 or 5 (Muhr's testimony), or 10 to 12 (defendant's testimony) bars in all, arriving at 1 or 2 o'clock in the morning at the apartment of Allene Cole, a female friend of the victim. The men arrived with six cans of beer which they were drinking at the time. The victim testified he "got sleepy" and "passed out." Upon awakening the next morning, he found the defendant gone, his car was gone, and the ignition key was missing from his set of keys. He immediately reported the car stolen and went to defendant's home to inquire regarding the car, but defendant was not home. A few days later, the victim again visited defendant's home and after not finding him home, left a note advising him to call or return the car. On November 11, 5 days after the car had been taken, the victim and a police officer went to defendant's home. Defendant produced a xerox copy of a document purporting to be a bill of sale for the car. The victim conceded at trial that the signature appeared to be his, but denied that in fact it was his signature since he did not remember signing it. This document was placed in evidence as People's Exhibit No. 1. At trial, defendant introduced into evidence the original bill of sale and the victim's note which had been placed in the defendant's mailbox.[1]

Defendant related that prior to going to Miss Cole's apartment, he bought the car from the victim for $400.25 cash, and the victim signed the bill of sale. Defendant testified that he then left the girl friend's house, went to a bar, showed the car to a stranger and sold it to him for $400. The stranger drove the car off after using the key that defendant told him was under the seat. Allene Cole testified that prior to defendant's departure, she saw defendant in possession of the victim's keys and heard him tell the victim that he would not return the keys because he was afraid the victim would wreck the car. She heard defendant and the victim discussing the sale of the car and heard the victim say he did not want to sell because he owed payments on the vehicle. She testified that defendant had more to drink than the victim; they had about 6 to 12 cans of beer.

The police officer said that when defendant was arrested on November 11, he stated that he had taken the victim's key, received a bill of sale from the victim, and sold the car to a stranger for $400.

■■ Where evidence is circumstantial, proof beyond a reasonable doubt requires the exclusion of every reasonable hypothesis based upon the evidence which is consistent with innocence. (*People v. Cortez*, 26 Ill.App.3d 829, 326 N.E.2d 232.) The issue in this case is whether the

---

[1] The State's Attorney informed the appellant that the exhibits had been "destroyed," and thus were not available.

proof showed that defendant knowingly entered Muhr's vehicle without his consent. There is no direct evidence that defendant in fact entered Muhr's automobile. In fact, defendant testified that he did not enter the automobile after he left Allene Cole's apartment on the morning in question, although he did sell the vehicle to a third party. Generally speaking, the rule is that where a criminal act, such as a theft, is committed through the instrumentality of an innocent agent, the person who induced the act is a principal. (*Aldrich v. People*, 224 Ill. 622, 79 N.E. 964.) Therefore, if defendant, without Muhr's consent, sold the vehicle to an innocent third party who subsequently entered the vehicle without Muhr's permission, the defendant would be a principal.

■■ However, the evidence that Muhr did not give defendant permission to enter the vehicle after defendant left the apartment at 1 or 2 o'clock in the morning on November 6, 1974, is not persuasive. Muhr testified that he "got sleepy" while drinking the six cans of beer at Cole's apartment, that he "passed out," and that defendant left at 2 A.M.. This would have been after 9 hours of drinking beer. He had given permission to defendant to enter the automobile earlier that day and in fact they had driven in the automobile to Cole's apartment. Even though the victim knew where defendant resided, he waited 5 days before taking a police officer there. At trial, defendant produced the original bill of sale. Although Muhr admitted that the signature appeared to be his, he could not remember signing it. Ultimately, the proof of guilt comes down to a question of whether Muhr did or did not give defendant permission to enter his vehicle that morning, and whether defendant reasonably understood this. The only sober witness heard the men discussing the sale of the car, but she was unable to testify that the victim had not given defendant permission to enter the car. Considering all the circumstances, and with due deference to the opportunity of the trial judge to see the witnesses, we nevertheless have concluded that this evidence did not establish beyond a reasonable doubt that defendant knowingly entered the victim's vehicle without the victim's consent as charged in the complaint.

The judgment of the circuit court of Cook County is therefore reversed.

Reversed.